IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **ROBERT PICKNEY,** : | CIVIL ACTION |
|     **Plaintiff,** : | |
| : | |
| v. : | No. 22-1822 |
| : | |
| **MODIS, INC. and the CITY OF** : | |
| **PHILADELPHIA** : | |
|     **Defendants.** : | |
| : | |

**<u>MEMORANDUM</u>**

**Schiller, J.**     **December 13, 2022**

Modis, Inc. ("Modis") hired Robert Pickney as a computer support technician and assigned him to work on-site for its client, the City of Philadelphia (the "City"). Pickney, who suffers from diabetes, hypertension, and hypercholesterolemia, satisfactorily completed his work for the City and continued to do so even after it required remote work in response to the COVID-19 pandemic. The City eventually required its workers to return to the office. After Pickney received an accommodation to continue remote work, he alleges his hours were reduced and, ultimately, he was terminated because of his disabilities, request for an accommodation, and/or his opposition to workplace discrimination. Pickney asserts claims for disability discrimination and retaliation under the Americans with Disabilities Act ("ADA") and Pennsylvania Human Relations Act ("PHRA"). Modis and the City (collectively, "Defendants") now separately move to dismiss his Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons that follow, the Court will grant Modis's motion and deny the City's. Pickney may amend claims against Modis.

1

I. **BACKGROUND**

Modis provides "technology and digital engineering services on a consulting basis through contracts" with private and governmental employers. (Am. Compl. ¶ 13.) In 2019, it hired Pickney as a "PC/Desktop Workstation Support Technician" and assigned him to work in-person for the City of Philadelphia. (*Id.* ¶¶ 12, 14, 16.)[1]

Although Pickney alleges he was a Modis employee (*id.* ¶ 1), the City "exercised significant control" over his "work hours, work duties and responsibilities, compensation, and the terms and conditions" of his employment. (*Id.* ¶ 15.) Specifically, the City required Pickney to work in its Arch Street office and to report to Donna Gonzales, its Deputy Information Technology Director of Performance Management and Technology. (*Id.* ¶ 16.) Gonzales delegated assignments to Pickney and decided where and for whom Pickney would work. (*Id.*) The City "maintained sole authority" to discipline, evaluate, and terminate Pickney's services working for it. (*Id.* ¶ 17.) Modis, on the other hand, only assigned Pickney to the City and "administered [his] payroll and benefits." (*Id.* ¶ 15.)

Due to the spread of COVID-19 in March 2020, "Pickney, as well as staff employed by [the] City in the Department of Health and Human Services began to work remotely." (*Id.* ¶ 18.) But soon thereafter, the City "initiated a plan return to in-person operations." (*Id.* ¶ 19.) In June 2020, Pickney, who has diabetes, hypertension, and hypercholesterolemia, requested to continue working remotely as an accommodation for his disabilities, furnishing documentation from his physician in support of his request. (*Id.* ¶¶ 20-21.)[2] Defendants granted his request. (*Id.*) But

---

[1]  Pickney suggests—but does not explicitly aver—that he was assigned to work for the Philadelphia Department of Health and Human Services. (Am. Compl. ¶ 18.)

[2]  Although Pickney does not explicitly plead he requested the accommodation from both Modis and the City, he pleads "Defendant*s*" (emphasis added) granted the request. (*Id.* ¶ 21).

2

shortly thereafter, Gonzales directed Pickney to report for in-person work on September 4 and 5, 2020. (*Id.* ¶ 22.) Pickney informed Gonzales of his accommodation, who then directed him to furnish documentation from his physician even though he had already done so. (*Id.*) Even though he had previously been excused from returning to the office, Pickney complied with her request to return to the office. (*Id.*)

On November 12, 2020, Nick Rubino, Modis's Senior Solutions Consultant, told Pickney he was performing well, but he would no longer be permitted to work remotely on a full-time basis. (*Id.* ¶ 23.) Rubino also told Pickney his hours would be reduced to part-time or he would be terminated if he did not return to work in-person. (*Id.*) Pickney "was forced to accept part-time status" in December 2020 because his disabilities precluded his return to in-person work. (*Id.* ¶ 24.) Pickney alleges Defendants did not mandate in-person work for any non-disabled employees and allowed several of his non-disabled team members to continue working remotely full time. (*Id.* ¶ 25.)

Pickney dual filed a charge of discrimination against Defendants with the Equal Employment Opportunity Commission ("EEOC") and Pennsylvania Human Relations Commission against Defendants in February 2021. (*Id.* ¶ 26.) He alleges Defendants knew this no later than April 2021. (*Id.* ¶ 27.) Two months later, Modis told Pickney the City declined to renew his appointment and his employment with the City would terminate at the end of the month. (*Id.* ¶ 27.)

The EEOC issued Pickney a right-to-sue letter in February 2022. (*Id.* ¶ 5.) Pickney then timely filed a complaint before this Court. (ECF 1.)

---

Construing Pickney's allegations in the light most favorable to him, he requested the accommodation from both the City and Modis.

3

## II. STANDARD OF REVIEW

In deciding Defendants' motions to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court must accept as true all well-pleaded allegations in the Amended Complaint and make all reasonable inferences in favor of Pickney. *Oakwood Lab'ys LLC v. Thanoo*, 999 F.3d 892, 904 (3d Cir. 2021). A well-pleaded complaint "require[s] only a short and plain statement of the claim showing that the pleader is entitled to relief" and need not contain "detailed factual allegations." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 232-34 (3d Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). To survive Defendants' motions, Pickney must allege enough factual matter, taken as true, to suggest the required elements of the his claims and raise a reasonable expectation that discovery will reveal evidence of these elements. *Id.*; *see also Oakwood Lab'ys*, 999 F.3d at 904. In turn, the Court must "draw on its judicial experience and common sense" to find, at minimum, "a reasonable inference that the [Defendants are] liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

## III. DISCUSSION

The ADA prohibits covered entities from discriminating against qualifying employees based on disability.[3] 42 U.S.C. § 12112(a). Covered entities include employers, employment agencies, and labor organizations. *Id.* § 12112(2). The statute defines an "employee" as "an individual employed by an employer." *Id.* § 12111(4). Grappling with this circular definition, Courts in the Third Circuit have held that the ADA does not cover independent contractors. *See*

---

[3] Pickney asserts disability discrimination and retaliation claims under both the ADA and the PHRA. The Court will only discuss Pickney's ADA claim because the "analysis of an ADA claim applies equally to a PHRA claim." *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 306 (3d Cir. 1999) (citing *Kelly v. Drexel Univ.*, 94 F.3d 102, 105 (3d Cir. 1996)).

4

*Tani v. FPL/Next Era Energy*, No. 10-860, 2013 WL 3957710, at *5 (D. Del. July 29, 2013) (citing *Menkowitz v. Pottstown Mem'l Med. Ctr.*, 154 F.3d 122 (3d Cir. 1998)); *Itiowe v. NBCUniversal Inc.*, No. 13-04155, 2013 WL 5435487, at *3 (D.N.J. Sept. 27, 2013) (holding Title I of the ADA "does not allow an independent contractor to bring a claim"), *aff'd sub nom. Itiowe v. NBC Universal Inc.*, 556 F. App'x 126 (3d Cir. 2014); *Silviotti v. The Morning Call, Inc.*, No. 01-4692, 2002 WL 31859429, at *4 (E.D. Pa. Dec. 12, 2002).

All ADA discrimination claims are subject to the *McDonnell Douglas* burden-shifting framework. *Gavurnik v. Home Props., L.P.*, 227 F. Supp. 3d 410, 416 (E.D. Pa. 2017) (citing *Benko v. Portage Area Sch. Dist.*, 241 F. App'x 842, 845 (3d Cir. 2007)); *see also Canada v. Samuel Grossi & Sons, Inc.*, 49 F.4th 340, 346 (3d Cir. 2022). To establish a *prima facie* case of disability discrimination, Pickney must allege facts showing he (1) is disabled within the meaning of the ADA; (2) "is otherwise qualified to perform the essential functions of the job, with our without reasonable accommodations by the employer;" and (3) has suffered an "otherwise adverse employment decision as a result of discrimination." *Ruggiero v. Mount Nittany Med. Ctr.*, 736 F. App'x 35, 41 (3d Cir. 2018) (citing *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 306 (3d Cir. 1999)) (internal quotations omitted).

Similarly, to state an ADA retaliation claim, Pickney must allege that (1) he engaged in a protected activity; (2) his employer took an adverse employment action after or contemporaneous with his protected activity; and (3) there is a causal connection between his protected activity and the adverse action. *Canada*, 49 F.4th at 346.

### A. The Court grants Modis's motion to dismiss because Pickney does not adequately plead Modis took an adverse employment action against him.

Modis argues the Court should dismiss Pickney's Amended Complaint because he fails to allege it took any adverse action against him. (Modis's Mot. to Dismiss, ECF 12, at 6-9.) Pickney

5

responds that he adequately pleads an adverse employment action because he alleges Rubino advised him that his hours would be reduced if he continued to work from home. (Pl.'s Opp'n to Modis's Mot. to Dismiss, ECF 18, at 7-8.) Modis concedes that a reduction in hours could, under some circumstances, constitute an adverse employment action but contends it does not in this case because Pickney alleges it was the City—not Modis—that controlled his hours and the terms of his employment. (Modis's Reply Br., ECF 21 at 1.) The Court grants Modis's motion because Pickney fails to allege *Modis* took an adverse action against him.

An adverse employment action is "one which alters the employee's compensation, terms, conditions, or privileges of employment, deprives him or her of employment opportunities, or adversely affects his or her status as an employee." *Decker v. Alliant Techs., LLC*, 871 F. Supp. 2d 413, 428 (E.D. Pa. 2012) (citing *Robinson v. City of Pittsburgh*, 129 F.3d 1286, 1300 (3d Cir. 1997), *overruled on other grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 60 (2006) and *Burlington Indus, Inc. v. Ellerth*, 524 U.S. 742, 753-54 (1998)). A reduction in hours may qualify as an adverse employment action if it affects an employee's compensation. *Moody v. Atl. City Bd. of Educ.*, 870 F.3d 206, 217 (3d Cir. 2017) (citing *Cotton v. Cracker Barrel Old Country Store, Inc.*, 434 F.3d 1227, 1231 (11th Cir. 2006)); *Fabian v. St. Mary's Med. Ctr.*, No. 16-4741, 2018 WL 4145037, at *5 (E.D. Pa. Aug. 29, 2018).

Although Pickney pleads facts showing an adverse employment action, his pleading is unclear as to *who* took the action against him. Pickney alleges Rubino—a Modis employee— "advised [him] that he was doing a great job, and that Defendant City loved him, but that he would no longer be permitted to work remotely on a full-time basis, thereby revoking his reasonable accommodation." (Am. Compl. ¶ 23). He continues: "Rubino further informed [him] that his work hours would be reduced to part-time, or his employment would be terminated, if he did not return

6

to work in-person. As [he] could not comply with Defendants' directive that [he] return to in-person work . . . [he] was forced to accept part-time status, resulting in a significant loss of income." (*Id.* ¶ 24). There is no dispute Pickney's hours were reduced leading to a loss in compensation—which is an adverse employment action. The Court just does not know *who* made the decision to require he become part-time if he did not return to in-person work. Arguably, the Court could infer Modis and the City jointly made the decision based on Pickney's pleading that "Defendants' directive" he return to in-person work forced him to accept part-time status. (*Id.*) But the Court must read the Amended Complaint as a whole and, considering the other facts alleged, will not reward Pickney for his ambiguous pleading. For example, Pickney pleads "[the] City exercised significant control over [his] *work hours*, work duties and responsibilities, *compensation*, and the terms and conditions of [his] employment." (*Id.* ¶ 15; *see also id.* ¶ 16) (emphasis added.) He goes further and alleges the "City maintained *sole authority* to [discipline him], evaluate [his] performance, and terminate [his] services with [the City.]" (*Id.* ¶ 17) (emphasis added.) Modis, on the other hand, only "assigned [Pickney] to perform services for [the City] and administered [his] payroll and benefits." (*Id.* ¶ 15.) Although not directly at odds with a finding Modis and the City jointly made the decision, the Court declines to infer that it was a joint decision in light of Pickney's emphatic averments that the City—not Modis—controlled nearly all aspects of his employment and Modis was merely responsible for placement and administering payroll.[4]

---

[4]   *See, e.g., Deeter v. Trinity Servs. Grp., Inc.*, No. 14-215E, 2015 WL 3504959, at *1-2 (W.D. Pa. June 3, 2015) (granting motion to dismiss because the plaintiff alleged only that staffing agency "advised her" she was no longer required to work for the client—not that the staffing agency *participated in or contributed to the decision* to end her employment with the client); *cf. Thange v. Oxford Global Resources*, No. 19-5979, 2022 WL 2046938, at *11 (D.N.J. June 7, 2022) (granting summary judgment in favor of the defendant after the plaintiff failed to provide evidence to demonstrate staffing agency *participated in* the client's decision to terminate his employment).

Because the Court cannot determine which Defendant took an adverse employment action against Pickney, it dismisses his Amended Complaint with leave to amend to clearly identify the actor responsible for reducing his hours. *See* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires.").

**B. The Court denies the City's motion to dismiss because Pickney pleads sufficient facts that it was his employer.**

The City argues the Court must dismiss Pickney's Amended Complaint because Pickney was a contract worker and fails to allege specific facts showing the City was his employer or his joint employer. (City's Mot. to Dismiss Br. for, ECF 9, at 1.) Pickney argues he has pled enough facts to show the City was a joint employer because he alleges the City exercised significant control over the terms and conditions of his work. (Pl.'s Br. in Opp'n to City Mot. to Dismiss, ECF 17, at 1, 6-7.)

The Third Circuit has recognized that two entities may be "joint employers" of one employee for the purposes of a Title VII claim. *Faush v. Tuesday Morning, Inc.*, 808 F.3d 208, 215 (3d Cir. 2015); *Graves v. Lowery*, 117 F.3d 723, 727 (3d Cir. 1997). Although less clear, courts in this circuit have recognized that joint employer liability also exists under the ADA and the PHRA. *See Cella v. Villanova Univ.*, No. 01-7181, 2003 WL 329147, at *7 (E.D. Pa. Feb. 12, 2003), *aff'd*, 113 F. App'x 454 (3d Cir. 2004); *Bosley v. Rawden Joint Ventures Corp.*, 21-4616, 2022 WL 3701171, at *2 (E.D. Pa. Aug. 26, 2022); *Washington v. ABM Janitoral Servs.*, No, 11-6462, 2013 WL 6047494, at *4 (E.D. Pa. Nov. 15, 2013); *Caroll v. Sunrise Detox Cherry Hill, LLC*, No. 19-17287, 2020 WL 4218409, at *6 (D.N.J. July 22, 2020).

Courts in this circuit have used two tests to determine joint liability under the ADA: the *Enterprise* test[5] and the common-law test articulated in *Darden*.[6] The parties both apply the *Enterprise* test to determine ADA joint employer liability.[7] City's Br. at 5; Pl.'s Br. in Opp'n to City Mot. to Dismiss at 6-7; s*ee Enterprise*, 683 F.3d at 469; *Caroll*, 2020 WL 4218409, at *6 ("While there is little case law establishing a specific test under the ADA, the Third Circuit affirmed the court's use of the *Enterprise* test in *Cella v. Villanova University* to establish joint employment liability under the ADA."); *cf. Plaso v. IJKG, LLC*, 553 F. App'x 199, 204-05 (3d Cir. 2014) (applying factors similar to those in *Enterprise*, albeit not citing *Enterprise*). But the City also cites cases in its brief that rely upon the *Darden* common-law test rather than the *Enterprise* test or its analogs.[8] City's Br. at 5-6; *see also Faush*, 808 F.3d at 213-15 (applying *Darden* and rejecting *Enterprise* for Title VII joint employer claims because of the "circular"

---

[5]  *In re Enterprise Rent-A-Car Wage & Hour Empl. Practices Litig.*, 683 F.3d 462, 469 (3d Cir. 2012).

[6]  *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 323-24 (1992).

[7]  Under the *Enterprise* test, a district court assesses whether the alleged employer has: "(1) authority to hire and fire employees; (2) authority to promulgate work rules and assignments, and set conditions of employment, including compensation, benefits, and hours; (3) day-to-day supervision, including employee discipline; and (4) control of employee records, including payroll, insurance, taxes, and the like." *Enterprise*, 683 F.3d at 469; *see also Plaso*, 553 F. App'x 199 at 204-05.

[8]  Under *Darden*, a district court assesses the "hiring party's right to control the manner and means by which the product is accomplished" by weighing (i) the skill required; (ii) the source of the instrumentalities and tools; (iii) the location of the work; (iv) the duration of the relationship between the parties; (v) whether the hiring party has the right to assign additional projects to the hired party; (vi) the extent of the hired party's discretion over when and how long to work; (vii) the method of payment; (viii) the hired party's role in hiring and paying assistants; (ix) whether the work is part of the hiring party's regular business; (x) whether the hiring party is a business; and (xi) the tax and treatment of the hired party. *Darden*, 503 U.S. at 323-24.

Although the two tests are similar, the court in *Butterbaugh v. Chertoff*, 470 F. Supp. 2d 485 (W.D. Pa. 2007) engaged in a careful and thoughtful discussion distinguishing the two.

definition of employee in the statute). The parties do not brief the issue of which test should apply. But the Court need not decide which test applies at this time because Pickney has alleged facts showing a joint employer relationship under either.

The City cites its contract with Modis in support of its argument that Pickney cannot allege it is a joint employer. It attaches the Professional Services Contract between the City and Modis to its motion and argues that because the contract states (i) none of Modis's contractors would be employees of the City and (ii) Modis—not the City—would pay its employees, the City cannot be Pickney's joint employer. (ECF 13-1.) While the contract may be evidence that the City was not a joint employer, at this stage of the litigation, Pickney still pleads enough facts to plausibly allege that it was. Similar agreements do not preclude a finding of an employer-employee relationship. The contract is informative but not dispositive of the issue. *See Brown v. J. Kaz, Inc.*, 581 F.3d 175, 181 (3d Cir. 2009) (holding an "Independent Contractor Agreement" is "strong evidence" plaintiff was an independent contractor but not dispositive); *Thange*, 2022 WL 2046938, at *5-6 (same).

Although discovery might reveal otherwise, Pickney has plausibly alleged the City was a joint employer under either test. He alleges the City maintained "sole authority" to discipline, evaluate, and, perhaps most importantly, terminate his services for the City. (Am. Compl. ¶ 17.) He also pleads that the City controlled his "work hours, work duties and responsibilities, compensation, and the terms and conditions of [his] employment. (*Id.* at ¶ 15.) Specifically, the City required him to work at their Arch Street office from 11:00 a.m. to 7:00 p.m. Monday through Friday and determined his compensation. (*Id.*) He worked with the City from 2019 to early 2021 and reported directly to Gonzales, a City employee who supervised his day-to-day, gave him assignments, and provided direction and support. (*Id.* at ¶ 16.) On the other hand, Modis—not the

City—administered his pay and benefits. (*Id.* at ¶ 15.) Weighing the factors, Pickney's allegations suffice to plead a plausible joint employer relationship between the City and Modis. *See Rippy v. Phila. Dep't of Pub. Health*, No. 19-1839, 2019 WL 4849439, at *5, 7 (E.D. Pa. Sept. 30, 2019) (denying motion to dismiss when plaintiff alleged the City was a joint employer). Therefore, the City's motion is dismissed.

### IV. CONCLUSION

For the foregoing reasons, Modis's Motion to Dismiss is granted and the City's is denied. Pickney is granted leave to amend his complaint to cure his pleading deficiencies against Modis consistent with this Memorandum.

An Order consistent with this Memorandum will be docketed separately.